Roger Cox, COX for Petitioner Yaw Kasamu Frye. This is a petition for review of a final removal order of the Board of Reservation Appeals. There are two main issues in this case. First is whether the Res Judicata Doctrine bars a second removal proceeding on the same facts. If you're right about that, what do we do about the second one for removal overstaying his visa? What happens to that? I believe, Your Honor, if the Res Judicata Doctrine is applied here, that that would mean the removal order is abolished. Why? The Res Judicata seems to me as to the aggravated assault, aggravated felony versus the criminal moral turpitude, you've got a very strong argument, 238B versus 240, and their failure to convert the 238B into a 240 proceeding before the final judgment. It seems to me that's a very strong argument. But I don't know how that helps you with the second ground for, unless they've waived it, and I'm going to ask your friend across the way about that, because they will be responding to it in brief. But you will concede that your client is here having overstayed his visa. If your argument is right, he basically gets a pass for the rest of his life to stay here on an expired visa because they screwed up and didn't include the expired visa on the, they didn't terminate the 238B, convert it to a 240, and then include the expired visa in that proceeding. First of all, Your Honor, the reason we would argue that there is a bar to the overstay would be that the Res Judicata doctrine applies under Huffley-Dawson in this court to bar relitigating matters that should have been litigated in the earlier suit. And the overstay was very much a part of the same facts that were well known. It's not the same cause of action, but the same facts were well known. Okay, but for Res Judicata, don't you have to have the same cause of action? I think you need the same nucleus of facts, Your Honor. You've never, by any chance, practiced in New Jersey, have you? A little bit. Okay, all right. Well, I've been blessed by never having to have to practice in New Jersey. Hey! I've heard that my right has been cursed by having to practice in New Jersey quite a bit. They have this weird animal called the Entire Controversy Doctrine, which I've never ever understood. I'm not sure anybody understands it. We muddle through it when it gets here on diversity. But it seems to me that's what you're arguing. You're arguing an entire controversy approach to Res Judicata, but they're two very, very different doctrines. Well, I'm arguing that the inherent in the Res Judicata concept is that you have a nucleus of facts in existence when you bring the first proceeding, and you don't put something in there. You can't go back and put it in the second proceeding if it's all part of the same nucleus. How is that a nucleus? That's not really part of the same nucleus of fact in the sense of a joinder of claim or something of that sort. That's just something that they could have brought against him, not even in the 238B. They could have forgotten about the assault and just gone against him on the expired visa in the 240 proceeding. They couldn't actually go after him for anything in the 238B, except... No, no, no. In the 240 proceeding, they could have never brought the 238. They could have just initiated the 240 proceeding. The only ground in that 240 proceeding would have been having overstayed his visa, forgetting all about his criminal conduct, and there would have been no defense to that. Is that right? I think you're right. I can't disagree with your logic. So you're saying that because they blew it on the 238B proceeding, he basically has a license to not only get out of jail for you but to remain here free for the rest of his life? Well, Your Honor, to address that point, Mr. Fry, having been convicted of a crime which was by the IJ, decided to be a moral turpitude, no longer being in the country, he would have to reapply to get back into the country and seek a 212H waiver. So there would be some—it wouldn't be as though he's got a free pass. Well, but if you're right on your raise to the cotta argument, the conviction for the aggravated assault goes out the window. The conviction for the—there never was a conviction for an aggravated assault. That went out the window on the IJs. And what is the crime in Delaware that he was convicted of? It was a misdemeanor. That's right. He was charged improperly in the 238 proceeding as if he had been convicted of a felony. And the crime was— They misstated the statute. We would call it corruptions of the moral mind or something like that, or indecent assault? It was unwanted sexual contact is all it was. There was no age stated in Section 767. It doesn't require proof of being a minor. But if you're right about the invalidity of his order of removal based upon that, because they went with the 238B rather than the 240, if you're right about that, then he now cannot be removed for that Delaware conviction. The only thing left is having the lawyer state his visa, so he never would be removed and have to reapply, as you're arguing. You're saying he has to be— That's the argument. Under those facts, yes, sir. That's the argument. What's your best case for the proposition that you're arguing? I think it's Huckabee Dawson. That is, barred from re-litigating matters that should have been litigated in the earlier suit. It doesn't make sense to have seriatim removal proceedings, one after the other, on known facts. Well, it doesn't make sense, but the one that's with the monster term doesn't make any sense. The issue that we have to deal with is not whether or not it makes any sense, but whether or not we can do it. And you're saying they cannot do it because of res judicata, but you're also saying that the test of res judicata does not have as any of its prongs a common nucleus of operative facts. That's a different doctrine. I'm sorry. I am saying it does have a— You're saying it does have— Yes, I did. But Huck doesn't even say that. I don't know of any place where the res judicata test is laid out to include that as an element. It talks about a same cause of action. It's an identity of issues, right? All I'm saying is the facts averred in the Section 238 proceeding included what kind of a visa he had, when he entered the country, how long he had been here. So all those facts were part of that mix when the charge was made, and all those facts were well known, and all those facts could have and should have been asserted at that time. So the mistake is they didn't have another paragraph, and I'm not belittling the argument, you may be right, saying that because this is the kind of visa he had, this is when he came, he's overstayed his visa, and we therefore seek to remove also based upon his overstaying the visa. That could have been another paragraph. It could have been because it's a 240 proceeding, but they're in 238. They were in 238 proceedings, so they wouldn't have added it because they couldn't add it. Okay. Am I missing something here? Maybe this is just the way things operate, but I was kind of surprised when I saw that the 240 proceeding was brought the day after the dismissal of the 238B proceeding, which struck me a little strange. It was almost like a game of gotcha, or we're going to show you, or what? I don't want to comment on it, Your Honor. It seems rather aggressive. We're just talking about there's something more going on here than pops off the face of the record. I don't know what it was. Are you saying that's not within prosecutorial discretion, though, to be able to bring it? To bring the 238 thing to 240? We're saying that it's not within prosecutorial discretion to the extent that res judicata is embedded in the INA, which this Court held in Duval on collateral estoppel by implication res judicata, and therefore there is discretion, but that is trumped by a legal doctrine, which this Court held is embedded in the Act, and there are certain exceptions. One statutorily, if a judge in a criminal sentencing in an aggravated felony case declines to remove the statute, it expressly gives the INS the ability to bring a 240 proceeding, and there are a couple of regulations that if the DSO says there's an issue of fact here or it's insufficient evidence, then a 240 proceeding can be instituted. Those exceptions, to me, prove the rule that if there's no exception, then res judicata applies. You wouldn't need exceptions if you didn't have res judicata as a governing principle overriding these proceedings. And, again, you may be right about that. At least for me, we haven't discussed this case. The more difficult issue is whether or not the application of res judicata would allow you to prevail on that second ground for removal, having overstated the visa ground. That, to me, is more difficult. I understand, Your Honor. I'm running out of time. May I move on to the other point? Sure. We also argue that the second proceeding was a violation of due process under the facts of this case where the INS originally incorrectly charged the Section 238 proceeding as an aggravated felony and miscited the statute that Mr. Frey was convicted under. Can you help me understand that? Are you talking procedural due process? Yes, Your Honor. Procedural. What process should they have? I don't understand that argument. I don't understand why that would be a violation. Because they made a mistake, a procedural error, why would that be a denial of procedural due process, even if you're alleging a vindicated prosecution, vindictive prosecution? We're not alleging vindictive. We're alleging that under these unique circumstances where this court has held in the same case that interpretation and exposition of criminal law is a task outside even the BIA's sphere of special influence, special competence, excuse me. In this case, it wasn't the BIA. It wasn't the IJ. It was a decided service officer who, on the face of it, isn't even trained in law, let alone criminal law. But doesn't that argument cut both ways? If that's not within the expertise of the agency, as you're arguing, I think properly, it clearly would not be something we can charge the deciding service officer with the noise, a person probably not even an attorney, as you've just said. So he or she makes a mistake, charges it as an aggravated felony. In reality, it's not an aggravated felony. I understand, Your Honor. And how does a due process violation flow from that? Your Honor, you may be right. I'm making the argument. I want to move on to my last point. Okay, go ahead. Before the hourglass disappears. By the way, no sword comes out if you chop your head off. Well, I'm worried about my head. When the light turns red, your head will still be there. Don't worry. The left of you will still be there, too. The IJ refused a continuance to enable the petitioner's U.S. citizen spouse to pursue an I-130 petition in his behalf, which would have led to an adjustment of status. Okay, let's get into that. And if your light turns red, we'll give you a little more time, and we'll get back to you. Thank you, Your Honor. What is the way, after reading this, I'll tell you, I'm a little bit befuddled. What is the proper procedure for appealing an I-130 denial? There is no question about it. It's filed with the district director. Okay. There's no question about it. And that's what she was told. It's in black and white. And she was told that. She was told that by the district director himself in his notice of denial in capital letters. And beyond that, it's very clear and simple and explicit in the regulations that the appeal must be filed with the district director. Within how many days? I think 30 days, but I'm guessing at the moment. But she was told 15, right? No, this goes back to the prior step. She filed an I-130 petition. The DD issued a notice of intent to deny. And so I'll give you 15 more days to submit additional proof. When the regulation expressly calls for 60 days. And her counsel wrote and said, I'm going to make a supplemental submission within 60 days. And before that was done, the DD issued a notice of denial before the 60 days expired. And then within the 60 days, the supplemental submission was made on December 30, 2004, I think it was. And then Mrs. Fry and her counsel became aware of the order of denial. And an appeal was filed on January 18, 2005, with the district director, as instructed by the district director. And as instructed by the regulations, which are cited in our briefs. So there's no question about it. How many continuances were granted? Six or seven? Well, there were a number of continuances granted. The attorney general said seven, but actually the last one was the day of denial of the continuance. I'm not going to pull over how many. There were a number of continuances. They were primarily for allowing the process of the I-130 petition to reach home base. It just took a long, long time. So there were a number of continuances. When you say reach home base, what do you mean? To the district director who made the decision. It had circulated through the system to various offices to get to the district director in Philadelphia. Who had the documents? They have to be filed in a different location, whether it's Vermont or Delaware, I don't know. But it just took forever to get to where it had to go. Now, coming back to the point, and that is, first of all, these continuances were unopposed. There was never any opposition asserted by counsel for INS. Secondly, the IJ never mentioned how many continuances there were in denying this one. He simply said, I'm going to have to move on here. The DD had improperly denied the I-130 before receiving the supplemental submission. Mrs. Rice's counsel had made the supplemental submission to the DD, had sent a copy of the supplemental submission cover letter to the IJ, and had sent a copy of the appellate brief, which is properly filed with the DD, to the IJ. So the IJ had all the facts describing in the letter what the supplemental submission was, describing in detail in the brief what the supplemental submission was. Neither the IJ nor the BIA made any reference whatsoever in how many continuances there were. But wasn't it within the IJ's right to say, you know, I need to move my docket, I need to move this case? It seems to me your better argument is not that the IJ erred, but that the BIA erred. As I recall, the BIA was accusing your client of failing to do things that your client had done properly. Correct. And it was the BIA that misinterpreted the regulations in respect to what you said regarding the district director. Correct. This court has said that when the IJ, I'm sorry, when the BIA writes an opinion, writes its own opinion, that opinion is reviewed, not the IJ's decision. The opinion of the BIA simply can't stand here. It's based on mistaken facts, mistaken view of the law, that is where you file your appeal, and mistaken facts about the absence of any evidence in the record of the bonafides of the marriage. It was cited by the BIA in its very opinion, the part of the record where that is. Nonetheless, it's a discretion. We review on abuse of discretion, right? Under chaberia, there's a deferential standard review. There is no deference given where the findings of fact and conclusions of law are based on inferences or presumptions not grounded in the record. There's no contact between the conclusions of the BIA and the record. They're on different planets. There just is no relationship between what was relied on in the BIA opinion and what the facts were. But the discretion is based upon just an outright error. Outright error. That would be an abuse of discretion. Is that what you're arguing? Correct. The BIA said in the absence of evidence regarding the marriage, and some proof there was an appeal pending, we cannot conclude that he is entitled to a continuous or the IJ abused discretion in denying one. Well, they were citing the very evidence of the appeal in their opinion because they cited the stamp of the DD acknowledgment of the appellate brief. Okay. That's the file. Mr. Cox, I think we understand your argument. Did you use your time for rebuttal? No. One more small point. Answer the question first. Answer that question. I'm going to be no, but answer my question first. Did you use your time for rebuttal? I did. Oh, great. Then why don't you make that small point on rebuttal? Because if it's such a small point, you wouldn't want to. No, it's a large point. It's a short point. Okay. Sorry. Make it a large point on rebuttal. I'm going to try this. Is it Alysia Maroney? Perfect. Perfect. All right. You're sitting up there, though. You could have said anything. It's probably Smith, isn't it? May it please the court, my name is Alysia Maroney. And I represent the government of the United States. Could you talk about jurisdiction first? You stated that 1252G divests us of jurisdiction. But doesn't 1252A2D give us jurisdiction to hear questions of law and constitutional issues? We are no longer moving forward with that portion of the argument. We agree. Okay. Thank you. A wise move. You didn't at all respond to his second argument on the 238B versus 240. The whether or not res judicata, if it does apply here, would bar your moving in a 240 proceeding based upon overstaying his visa. You didn't respond to that. We don't. We absolutely agree with your Honor's take on that. Regardless of whether, which we're not conceding, whether res judicata applies. This petitioner illegally overstayed a visa and has no legal right to remain in this country. Why haven't you waived that position by not responding to the argument in his brief? Why isn't that waived? I don't believe we did waive it. I'm confident that in, I did not write this brief, but I am confident that when the previous counsel responded that res judicata did not apply because petitioner was charged under 237, both for the CIMT, the crime involving moral turpitude, and we stated and 237, those issues hadn't been previously litigated. So I believe that that sufficiently reserves the argument that this, the second claim is, is completely separate and not within, you know, the argument nucleus of facts that should have been brought at the time. Okay, let me ask you about the I-130 because I am befuddled. I get befuddled a lot. Especially, I'm learning, for some reason, I get fuddled easier when it's pulled outside. I cannot figure out this I-130 at all. I just can't figure it out. I mean, he did do what was asked of him within the time he had. He did it in the proper place. And to the extent that if we can get to the merits, I understand we may not be able to get to the merits of that. It's just whether or not the petition opened, reopened was improper or not. But I'm going to ask what else anyone can bring in to show that they really have a legitimate marriage and what he brought in the second time around. As you said, what he brought in the second time around. It would, the government would initially like to point out that there were two pictures and a marriage certificate that were provided in the first round. Right. That's flimsy. And at that point, we also have to recognize the context. We've got an individual who was placed in removal proceedings who gets married after those removal proceedings and is in, has been detained the entire time with one visit. Come to this picture. It looks like a sham marriage. The IJ is not convinced. But then he comes back within the time the rules allow, not within the time the director gave him. The district director at that point wrote a letter stating you have 15 days. As you can imagine, within the Department of Homeland Security, writing these letters, whereas the regulations might allow for 60 days or 30 days, whatever it may be, writing a petitioner and telling them that their rights evaporate after 60 days and providing them 60 days may not move a petitioner or an applicant to move forward quickly. That's a very interesting argument. You're saying that the law is that someone has 60 days. But 60 days doesn't really allow us to push these cases through. So this fellow or young lady who's concerned about his or her document, yeah, the law is 60 days, but we need to move this thing out of here. So we're going to give them 15 days just to move it. Yeah, no, Congress or the INS said 60 days. What do they know? I'm sorry. I misspoke. I do not mean to intend that the district director decided to change the regulations or the dates. But in order to get that information back within the time before the... To move it. To move it. Okay. You'll admit the fact that that letter said 15 days, that and $4.25 will get you a cup of coffee at Starbucks. It's worthless. Absolutely. Absolutely. We understand that. So you can't move this stuff. However, the record, this court is constricted to review the record as it stands. While we may have a letter dated November 11th from Petitioner's previous counsel, there's no evidence. We have one return receipt on the record as it stands. Okay, but you're getting ahead of me. We have one return receipt. Yeah, you're getting ahead of me. The issue is whether or not the abuse of discretion occurred with the failure to allow him to reopen. And let's get into that. Based upon what he tried to do, that he did it within legitimate grounds, the BIA basically made a mistake. It looks like in their reasoning for not allowing him to reopen. Why isn't that in and of itself a ruling based upon an error of law? I'm sorry, error of fact. Why is not that an abuse of discretion? Why shouldn't he be allowed to reopen? Because initially the application for adjustment of status is a discretionary determination. So at that point, before the IJ and before the Board of Immigration Appeals, Petitioner had been denied the application for I-130. He was detained, and there was no further adjudication left before that case. So obviously you had moved away from the IJ's abuse of discretion, determining that at that time with those facts it was proper. At the Board level, again, the Petitioner was detained. And Petitioner had no other forms of relief available. And there is no procedural error or there's no prejudice in moving that case out of the Board and out of the agency when Petitioner is fully capable of pursuing that claim of adjustment of status, the I-130, outside of the country. If he were removed, there's... Imagine how well he's going to make out when he is back on Whiskey from Ivory Coast. Exactly. So he's going to go back to the Ivory Coast and try to deal with it. I've never been to Ivory Coast. I've been to Ghana. Have you ever tried to get communications in and out of a West African country? With all due respect, Your Honor, I'd like to put the facts in front of you. We're dealing with somebody who is in this country illegally and who does not have a right to be here. Exactly. You're saying, let him go back to the Ivory Coast and fight his battle there. He doesn't have the right to be in this country. I thought the I-130 was granted. At this point, with the record in front of us... Let's talk about today. The I-130 is granted. So the federal government has said he has a right to be in the country, correct? Not necessarily. The I-130 has been granted. But whether he gets adjustment of status is, at this point, still a matter of discretion. That's why he has to be opened? I'm sorry? Is that the current case because of the new I-130? Yes. So if the I-130 is granted and this is a bona fide marriage, then the secretary, in his or her discretion, has the right to say, we're still going to ship you out because you've overstayed your visa? Is that correct? For a number of reasons. Whatever those reasons may be, whether it's he doesn't, the IJ or she or he, finds the CIMT, the crime involving moral turpitude, to be not in conjunction with the type of person we want to stay in this country. Whatever those reasons are, those are the immigration judge and the agency's determination to make. He's asking for an opportunity to have that decision made. Because that decision was made based on the supposition that he was not going to win on the I-130. He had lost, in fact. So shouldn't this just be a do-over? That discretionary determination needs to be made with all the facts, and those facts include the reality that the I-130 has been granted. Shouldn't we just turn back the clock and do it with all the facts at hand rather than have a decision made based on improper supposition? The improper supposition to which I refer is that the evidence supporting the bona fides of the marriage was never presented when, in fact, the record tells me that it was. The record does not hold an affirmative adjudication of the I-130 application. It should. That was the BIA's error, I guess, is what I'm suggesting. The BIA may have moved forward in fixing that error, but at this point there is no evidence, even through a motion to reopen to the board, that there is an application for a I-130 that has been approved. But that should have been part of the record. The BIA said that that was not part of the record when, in fact, it was part of the appendix to the brief, and the petitioner's wife filed it with the district director, which required it. The appeal had been filed at that point, but an affirmative adjudication had not gone through. Let me ask this. I'm assuming here that the government's interest is making certain that justice is done and its laws are complied with, the laws of the U.S. are complied with, and that means that Mr. Fry has to go back to the Ivory Coast, legitimate marriage or not, then he goes back to the Ivory Coast. But if it means that, given a fair opportunity to have the bona fides of the marriage presented to the proper authority, he stays, then he stays. I assume that's what the interest of the government is here. Would that be right? I would agree with that with the caveat that proceedings and procedure and time, the government has to place extra burdens on slowing down the proceedings and the procedure when a denial of an application was all that was in front of the immigration judge at that time. It would be a heavy burden to place on the government to... Hold it, hold it, hold it. How many immigration cases are pending as we sit here right now? Any idea? 50,000, would that be ballpark? 60,000, 70,000, 80,000? I have no idea. Let's say 50,000. My guess is that's somewhere in the general ballpark, probably a little bit low. Of those 50,000 cases that are pending, we're going to put a heavy burden on the government of the United States, the biggest, most powerful country in the world, by having Mr. Fry's case presented to a tribunal the way it should have been had the BAA not screwed up initially. That's what you're saying. We're going to put an oppressive burden right on the neck of the United States if Mr. Fry gets his day in court. It is not the government's contention that the BAA or the board erred at this point. Isn't that what you just said? It's going to create a heavy burden, we're going to slow this thing down. It sounds like the visa commercial, all these folks coming through with visa cards, somebody comes in with cash, everything stops. We're going to stop everything if Mr. Fry gets his day in court. But it is not, I'm sorry, I must have misspoke earlier, it's not the government's position that Mr. Fry, who carries the burden of this, has proceeded in a timely and appropriate and proper manner before the IJ or the Board of Immigration Appeals. Well, he did decide to proceed in a timely manner. He was given an incorrect initially. He was told by the district director that he had a certain amount of days to file an appeal. That was wrong. He had 60 days, he was told 15 days. He does come back within 60 days, but beyond the 15 days, and within that 60-day period, the rules of justice are turning here, his claim is denied because there's no additional evidence. He then comes with the additional evidence. The I-130, in fact, is then down the road granted. And unless I'm missing something here, what he wants is an opportunity to have a fair hearing where the issue would be adjustment of status based upon the I-130 being granted. The government could look at him and say, okay, Fry, we accept that your I-130 has been granted, but for the reasons that you just stated, Consul, we don't want you here because of this conviction for whatever reason. We just don't want you in the U.S., goodbye. And there'd be nothing that he could do about that, and he would lose his order of appeal. Or the government might say, all right, well, you've had your adjustment of status. This is a legitimate marriage. Given the fact that your wife is a U.S. citizen and you've entered into a bona fide relationship with her, okay, we're not going to move on your overstaying your visa. And we're still fighting the race to the car argument. Why shouldn't we simply put the car on that track? He may or may not win. If he wins, he wins. If he loses, he's gone. But it seems to me that would be in the government's best interest, and I certainly don't want to speak for them either, Consul, not me. It's not the government's position that we don't have an approved I-130 petition in front of us. Because it's not in the record. Absolutely. And until we see that, we're not going to agree that there was any error at that point. If he wanted an opportunity to show it in front of the BIA, the BIA would say it wasn't in the record, and now we're not quite sure where it is. At the point where he went before the BIA that the I-130 had not been approved, he was handing an appeal. He was handing an appeal with a date stamp of the appeal. He wasn't handing anything that would show prejudice at that point. Well, is that going to be subject to the race to the car argument? I would like to. Is that your best argument on the petition to reopen? Give me, if you can, a couple of sentences. I promise not to interrupt you. I won't speak for my two colleagues. There's much more to the question than I am. They may jump on you. But give me just a couple of sentences. What is your best argument on the petition to reopen? I'd like to reframe the issue. There was no abusive discretion either before the immigration judge or the Board of Immigration Appeals because at the time when the IJ looked at it, as you conceded, I'll just move to the Board. You understand that the IJ was within his bounds of discretion. Seriously, your argument is with what was in front of the IJ, he did not abuse his discretion. Absolutely not. If he had other things in front of him and overlooked them, that would have been a problem. Possibly. I don't know what those other things could be, and we might have a different discussion. The Board did not abuse its discretion, and I'm concerned that we might be misstating the facts here, respectfully, in that there was not approved I-130 before the Board. There was an application sent in. Regardless of where it was sent or not, there's not prejudice shown. And until you show that prejudice, there's no due process issue. There's not a process issue. There's not an abuse of discretion. And that's my argument for the denial of the 8th continuance. The difference between the 6th and 7th or the 7th and 8th, however you count it, the difference between that was that the immigration judge had a determination, an adjudicated I-130 application, and nothing changed between the time the IJ had that in front of him and the Board, except for that appeal had been made. It hadn't been satisfied. I'm sorry. Another thing changed, and the thing that changed is that the BIA said that the I-130 appeal may have merit, but in the absence of the actual evidence regarding the nature of his marriage and some proof that an appeal is pending, we cannot conclude he's entitled to a continuance. Both of those factual predicates were clearly wrong. There was evidence regarding the nature of the marriage, and the criticism from the BIA that the appeal should have, the I-130 appeal by Ms. Hawkins, should have been filed with the BIA rather than the district director, that was wrong. She did what she was supposed to do. She took her appeal to the district director, and the BIA is basing in part its affirmance on the erroneous assumption that she should have filed with it rather than with the district director. Regardless of where this government's contention, regardless of where that petition was at that time and where the appeal was, the board still did not abuse its discretion in affirming that motion because there was not an approved I-130 application at that time. And I understand what your point is. It just seems to me that if a court, whether it's our court or any other appellate court, makes its decision based in part upon a plainly erroneous assumption of fact that it necessarily follows that our decision is an abuse of discretion, why would that not be so? Because those findings and facts were superfluous at that point. They were immaterial? Immaterial, at that point. I'm going to give you a chance to get through this. You may or may not have the authority to make the concession that I'm trying to get out of you. I understand that. But there will be folks back at your office who are going to want to know what happened today and they may not be thrilled if you go back and say, well, I gave the case away. But why not simply come at this piece of litigation from the position that there's a real lay-based judicata argument here? Forget that for a second. Insofar as the petition reopened, given what happened, given the problems with the proceeding, why not simply say, look, it's in everyone's best interest here for Fry to get a good, fair, unfettered opportunity to present his I-130 petition to the appropriate deciding officer. Let's let that happen. We don't oppose his petition to reopen. It will be reopened. He may or may not then get an adjustment of status based upon the I-130. But let's move on to the judicata argument. And you're simply not opposing it. Why do you want to oppose it? Other than the fact you may have been told to. Respectfully, I conveniently agree with the position that I'm holding. Your Honor, you're taking, with all due respect, you're taking a snapshot of one particular portion in the entire claim. And earlier when you were speaking of the 50,000 or 70,000 or 80,000 cases that are there, the burden of providing an individual who in this case had a heightened burden of proof after a marriage, after removal proceedings, after conviction, providing nothing, in slowing the burden that allows that these sieves and leaks create in providing access process where we're trying to specifically streamline and quicken the process in certain situations such as filing an I-130, getting married after removal proceedings initiate, when you are in a jail and you have no contact with your wife. I've been trying to stay in front of the mic because it's being taped. I'm sorry. And so in that point, at that point, the snapshot is much wider than one part of the process chink in the armor link. It is much larger than that. There has been quite a bit of process at this point, and it is in the government's position to move through these without opening large holes and sieves for petitioners to continually try and stick their hooks into. Okay. What about the res judicata? Why isn't he writing these in so far as the aggravated felony? Why isn't he writing about that? Because res judicata under the Supreme Court and circuit court cases here require fully litigated proceedings. First of all, the 238B litigation proceeding wasn't litigated. I'm sorry. Administrative proceeding wasn't litigated. There was no IJ case arguing the merits of that charge in those facts. Wait a minute. The 238B proceeding, he was given a, he was ordered to remove, and then he went into court and got that? The habeas claim has, the district court has no confident jurisdiction to litigate issues of an administrative removal order on the INA. I'm not sure I understand you. The first prong we have to get to on res judicata is a judgment on the merits. You're saying there's no judgment on the merits here because the habeas ruling was not a judgment on the merits of the 238B issue? I'm saying that there's a requirement of fully litigate, that the issue, the charges were litigated. Well, they were at one time. They were, he walked through, litigated. The 238B issues were fully litigated as to the Delaware statute and what that goes to for immigration purposes. That was fully litigated, wasn't it? It was order removed. We disagree. How was it not, was that order removal entered? Order removal was entered. In the administrative order, removal was entered. How is that finally litigated then? Help me with that. Why isn't that a tantamount to fully litigating the issue on the merits? Because the district court is not the competent jurisdiction to bring any of the other claims. It's not the proper venue. Without Duval, you might have a better argument. Duval wasn't a res judicata case. It was collateral estoppel, as you know. The government could have been in the same position. If your argument is right, then Duval has got to be wrong. We're bound by Duval. Looking at this through the lens of Duval, don't we have to look at the 238B result in the immigration context as being a final adjudication on the merits of the immigration claim? We then get into the district court. The habeas proceeding says, no, the order of removal is out the door because that is not an aggravated felony for immigration purposes. Then the next day he comes in with a 240 removal, which appears to be absolutely fine except for the res judicata problem. I'm not sure why that is not a final order, a final resolution on the merits. You're saying that because the district court couldn't adjudicate the immigration claim, there's not a final resolution of the immigration claim for res judicata purposes? That's what you're saying? Yes. Is that your best shot, or is that just an argument you want to make? No, that's one argument. I understand why you're making that argument. You're not claiming in the second proceeding that it was an aggravated felony. No, it's a completely separate charge based under— exactly, exactly. It's not res judicata because the claim is for a crime involving moral turpitude. While it's the underlying nucleus of facts the petitioner is alleging, that's a completely different argument. The charges were different. The parties may have been the same. The facts may have been similar, but the elements are different. Was the cause of action the same? The cause of action? That you proceeded under 240. Was that the same as the cause of action? No. Why not? Absolutely not. One is an aggravated felony conviction, and the other is a crime involving moral turpitude. The Delaware conviction remains the same. How you look at that, be it an aggravated felony for immigration purposes or a crime of moral turpitude for immigration purposes, the Delaware conviction did not change. So if you look at that Delaware conviction as being that which allowed the immigration service to bring its notice of appeal, notice to appeal rather, doesn't the cause of action remain the same? The cause of action is criminal conduct in Delaware. That was exactly the same when the 238B proceeding was brought and then dismissed and then the next day when the 240 proceeding was brought. The Delaware conviction was exactly the same. So how did the cause of action change? There are things that occur in the INA and in the agency that are not well suited. I understand Duval encompassed collateral estoppel, but there are issues such as this. The INA provides for multiple different charges being brought based on the same facts. There is quite a bit of overlap. But you understand we are bound by Duval, and factually that is different. We don't have a Duval situation here where he's asking for a license to remain and continue criminal conduct. This is a single criminal occurrence that immigration incorrectly thought was an aggravated felony. It turns out it's a criminal moral turpitude, and because it was miscast the first time, he is saying he had your chance, he blew it. It's the same cause of action, you can't come back at me under 240. But as your colleague has stated, it's not the same charge, and that makes a large difference. The same charge for immigration purposes or for Delaware purposes? For immigration purposes. Why does that change the cause of action? That's what I'm trying to get at. And to the extent that you're saying it does, what's your best case? Because we are litigating whether in the first proceeding in front of the district court, we were litigating whether that unwanted sexual contact or statutory rape was an aggravated felony. At that point, the issues and facts are trying to fit those elements into aggravated felony. We are not litigating whether it's a crime involving moral turpitude. Petitioner has never once argued the merits of the claim of crime involving moral turpitude. The charges are different. At the immigration proceeding, the charges, if it was going to have been litigated, which it wasn't because it wasn't challenged on the merits, the question is whether the elements the petitioner was responsible for fit into a crime involving moral turpitude. And that's the issue. Those are two separate litigations. As I understand it, crime of moral turpitude could not form the basis of an expedited proceeding anyway. Absolutely. So how could you be penalized for not bringing an expedited proceeding for crime of moral turpitude when that was prohibited under the law? Absolutely. A. And B. But you could have brought a 240 proceeding, right? Not in the district court. We did bring it. Of course you could have brought a 240. Absolutely. But that's to appear based upon the Delaware conviction labeled as a 240 violation. Absolutely. And that is where the issue of prosecutorial discretion comes in. And the Supreme Court has held that this tribunal does not have the, is not well equipped to determine how an agency should move forward. Let's assume, I don't know if it is or not, but let's assume that arson constitutes an aggravated felony. And let's assume that you would, under the same facts, under the same conduct in Delaware, during the course of the proceeding in Delaware, let's assume you go into court and you bring a 238B proceeding alleging that the offense in Delaware was arson and that's an aggravated felony and one removed. And you get the notice of removal, there's a problem, and then he comes into court and says, wait a minute, this is arson, that's not an aggravated felony. And that's tossed out. And then you come back in and say, well, okay, we're not going to charge him for an arson. We understand it wasn't arson that he committed in Delaware. We're going to bring a 240 based upon the common law purported to. You're saying that would be okay because that's the prosecutorial discretion. Absolutely. So then what good is collateral estoppel? What good is res judicata? If collateral, if all those doctrines of issue preclusion and claim preclusion go out the window under the deference we allow for prosecutors and their discretion, what good are the doctrines? The doctrines are great when they apply, but in this situation, specifically the INA provides procedures to convert these proceedings from 238. Exactly. Before final judgment, and you didn't do it. Before final judgment in immigration court, you could have converted the 238B to a 240 based upon the same cause of action that you later brought the 240 in. Is that right? Right. Okay. But you didn't do that. No, because the agency... And then you bring a 240 based upon the cause of action you tried to bring in the 238B. Absolutely. Okay. So it sounds to me you've just said that this is the same cause of action, and if it is, then why isn't res judicata a problem for you? It was the same factual underlying issue that both claims were brought against, but that does not preclude... Absolutely. Absolutely. I mean, we didn't spend much time in the brief or in my conversation with you. That's why I wonder if it's waived or not. Absolutely not. I specifically stated it. I've read and noted and was in there in between the 237 and 230, the 237 claims. In the brief. Okay. I can find it for you. Well, I won't take your time. Do it for the EJ letter. Okay. Just very briefly, the issues of how an agency proceeds with claims, regardless of whether the district court determined that the 238B proceeding was improper, this court is not able to properly review those decisions of prosecutorial discretion. The agency has limited means. The agency has limited time. You know, limited time, limited means only gets you so far because there's still things like the federal statutes and the Constitution... Absolutely. ...that have been that rarely based upon claims of efficiency. But these, again, as I've said, there was lots of process involved, and I'll just skip to the conclusion because I'm out of time. The government respectfully asks that the court deny petitioner's motion. The agency properly exercised its discretion and did not violate the petitioner's constitutional rights when it decided to move forward with the 240 proceedings after the 238B proceedings were terminated. And further, neither the board nor the agency, with the information that was in front of them, with the information that was submitted also to the board, abused its discretion when it denied the 8th continuance or the 7th continuance, based on how you look at the facts. Okay. Counsel, I'm not going to try the name again. I'll just say thank you very much, counsel. Thank you. I appreciate your argument. Mr. Cox, you had a brief rebuttal, I believe? Yes, Your Honor. The point I was making or going to make before related to the number of continuances, and that is that under the Chenery Doctrine, which has been relied upon multiple times by this court, specifically in Conan v. Attorney General, decided by this court in 2005 and many other cases, the courts are forbidden. That is not the courts. The INS is forbidden from defending an agency decision on a different ground from the one that was relied upon by the agency itself. And the BIA and the IJ never mentioned the number of continuances. And beyond that, the BIA and the IJ never mentioned the idea of overstaying the visa. This whole case was litigated on the basis of the charge of the violation of the Delaware statute. Well, the 238, and I can't figure out why, the 238B was litigated. I don't know why they even brought the 238B. I don't know what the rush was. I don't know why they couldn't have simply brought the 240 based upon the Delaware statute and or the overstaying of the visa. That's why I think I'm missing something here. That's our position, Your Honor. Just a small point in that is that there was a mention made of the petitioner getting married while he was in jail. That simply isn't true. The habeas writ was granted in August 2002. He was released from custody at that time. He was married in February of 2003. And the record reflects that on December 3, 2003, he was taken into custody at one of the initial hearings in the 240 proceeding. Counselor, just so we can be clear, the granted I-130 petition, it was granted after, well, it wasn't part of the record before the IJ, right? I saw you move to expand the record. That's correct. I moved to supplement the record. Right. Because the I-130, what happened is the district director of the regulations is supposed to forward the record on Mrs. Frye's appeal promptly to the BIA. That may not have happened. We don't know what happened. The BIA, the DD went ahead and reconsidered his denial of the I-130. And in our motion to supplement the record, we attached a copy of the I-130 approval, which was in July of 2005. That was after your briefs were written, right? Correct. After the decision of the BIA. Right, right, right. In addition, the DD also has an obligation to forward the record promptly to the BIA. And apparently, in addition to reconsidering, also did, not promptly perhaps, but did that because, believe it or not, the BIA, in November of 2005, remanded the denial of the I-130 to the DD for reconsideration in light of his clear violation of the 60-day mandatory requirement for submitting supplemental evidence. So this is a case where he is saying he wants to have his amendment adjustment of status reopened based upon what you just said happened with the DD and the I-130. Based upon the whole sequence of facts in the case. In the alternative to the race to Dakota contention, we submit that this case should be sent back to the BIA in light of the facts as they exist for a request to remand to the IJ to do the follow-on to the I-130 granting. Isn't that a separate petition, though? I mean, couldn't you just go to them in the first instance and move to reopen? I don't think we can do anything while there's an outstanding removal order. That's why we're appealing this final order of removal. But is there a removal order? Pardon me, sir? Well, that's a good question. I'm glad you asked because is there a removal order? And I'm not sure they wouldn't have jurisdiction. I don't know if they have jurisdiction over that or not. I don't know. Yeah. The removal order is at page 6 of the appendix. Respondent is hereby ordered to move from the United States to the Ivory Coast pursuant to the charge set forth and is noticed to appear. And then the BIA, in pages 2 and 3 of the appendix, the appeal is dismissed. So there's a final order of removal. We understand your argument, Mr. Cox. Thank you very much for taking the time. Thank you, sir. Thank you.